## No. 10,899.

### ABRAHAM OLDSTEIN VS. FIREMEN'S BUILDING ASSOCIATION ET AL.

Merely building a wall by one of two adjacent owners and placing the same in
    equal proportions on each lot does not make it a party wall in absence of
    agreement to that effect.

The owner of the lot adjacent has no right to have the windows in the wall closed
    before he makes it a wall in common.

Servitude of light and of air through windows in a wall can not be acquired by
    prescription against the owner of the lot adjacent unless he is able to assert
    the right to have them closed.

The owner of the adjacent lot—that on which the servitude is claimed—has the
    right to use, to enjoy and to dispose of his property.

He who builds either above or below his soil, adjacent to his neighbor's property,
    must build in a perpendicular line.

He may build as high as he pleases, although it may occasion inconvenience, pro
    vided the building does not cause damage.

Damages must be proven to enable a private individual to invoke the benefit of
    city ordinance and prevent moving of wooden buildings within certain limits.
    Inconvenience, although great, will not suffice.

APPEAL from the Civil District Court for the Parish of Orleans.
    *King, J.*

*Moise & Cahn* for Plaintiff and Appellee:

1. A defendant pleading, his acts were rightfully done, as owner, will be held
   bound by the plea and can not deny ownership to avoid the responsibilities of
   an owner.
2. Where defendant's acts were such as an owner only could do, his plea they
   were done as owner is reinforced and he will not be permitted to ask a court
   to hold him as a trespasser.

Oldstein vs. Building Association et al.

The defendant used the wall as a side for his house and in lieu of weather-boarding. He nailed his studdings to it.

(a) Only an owner has the right to use and enjoy. R. C. C. 491.

(b) Only an owner could do as defendant did. Lepage Lois des Batiments, Sec. 160, fo. 43. Same author, No. 175, p. 47. Rogron, Art. 674; Dalloz, Vol. 30, p. 200.

Defendant plead his acts were acts of ownership.

(a) His acts could only have been the acts of an owner.

(b) He is estopped from denying the wall was one in common.

GENERAL CONCLUSION.—The wall is a wall in common owned in indivision by both adjoining proprietors.

5. A division wall built half on each side of two lots of ground owned by different owners is presumptively owned in indivision by the owners of the lots.

(a) Because the constructions on a man's land are presumed to be his. R. C. C. 506.

(b) Because it is presumed his antecedent vendors paid their share of the expense of erecting it.

GENERAL CONCLUSION.—The wall is a common wall owned in indivision by plaintiff and defendant.

6. Windows, etc., are urban servitudes. R. C. C. 712.

(a) View includes every opening which may facilitate looking out of a building. R. C. C. 715.

(b) Lights are openings made for admission of light. R. C. C. 715.

(aa) View is a servitude which confers the right of preventing a neighbor from raising any buildings to obstruct it. R. C. C. 716.

(bb) Light is a servitude which confers the right of preventing a neighbor from raising any construction to obstruct it. R. C. C. 717.

7. Windows, etc. (view and light), are continous servitudes. R. C. C. 727.

8. Windows, etc., are apparent servitudes. R. C. C. 728.

GENERAL CONCLUSION.—By the code and by the jurisprudence (5 R. 16, 35 An. 469, 15 An. 316, 18 An. 289) the servitudes we claim are urban, continuous and apparent.

9. Continuous and apparent servitudes (those claimed by plaintiff) may be acquired by possession of ten years. R. C. C 765.

(a) Possession for over forty is shown by plaintiff's witnesses.

(b) Possession for over ten is shown by defendant's witnesses.

10. Servitudes (continuous, apparent) may be acquired by immemorial possession.

(a) The code (R. C. C. 766) mentions such servitudes as can not be acquired by immemorial possession.

(b) They are the same servitudes which can not be acquired by prescription.

(c) The servitudes claimed in the case at bar (continuous, apparent) are not mentioned as unacquirable by immemorial possession.

(d) The servitudes claimed by plaintiff (continuous, apparent) are acquirable by prescription.

GENERAL CONCLUSION.—The servitudes claimed by plaintiff (continuous, apparent) are acquirable by immemorial possession.

(a) Statutory prescription gives title through possession by the lapse of time

(b) Immemorial possession gives title by a presumption of lawfulness of the original possession. Domat, Vol. 1, Secs. 2185-2187.

(c) In the absence of evidence to the contrary the whole wall, with its openings, etc., is presumed to have been constructed by both neighbors at their joint expense. Weil vs. Baker, 39 An. 1102.

(d) That which has existed (a wall with windows, etc.) for a period of time to which the memory of the present generation [can not reach should be maintained and confirmed. Goudsmit Roman Law, Sec. 81; Lawson Pre. Ev. Rule 86, p. 403.

GENERAL CONCLUSION.—The servitudes should be maintained and confirmed.

1. DEFINITION. By "Commonalty" we mean the " mitoynneté" of the French law.

2. A demand for the recognition and enforcement of a servitude of light, said to have been acquired by prescription, through windows in a wall alleged to have been common for thirty years, and a demand for half the value of that wall, are inconsistent, and petitioner is rightfully compelled to elect

3. The allegation of commonalty negatives the exclusive ownership involved in the demand for half its value. The rights of servitude and ownership can not coexist as to the same thing. R. C. C. 783, 648, 649.

4. Art. 677, R. C. C., providing for the presumption of commonalty as to walls separating buildings " as high as the upper part of the first story," is a mistranslation of the French text. The latter provides that the wall is presumed common, Jusqu'a l'héberge, which means, up to the roof, covering, or first point of separation. Littre verbo " heberge." Rogron, Art. 653, verbo "l'heberge," notes; Dictionaire de L'Academie Francaise, verbo "heberge;" Dalloz, Art. 653; Flemming & Tibbins' Fr. and Eng. Dic., verbo " Heberge."

5. The presumption established by Art 677 (C. N. 653) is to be strictly construed. A wall is presumed common when it separates buildings. If it separates a building from a vacant lot, it is not so presumed. There is no presumption of co-ownership in the proprietor of the vacant lot. He is not presumed to have contributed one-half the cost of constructing a wall from which he derives no benefit. In the absence of marks of commonalty, the wall is presumed to belong to the owner whose building it supports. Is fecit cui prodest. Demolombe, Cours de Code Civil, Vol. II, Arts. 314-323, pp. 346-357; Zachariæ, 239, p. 44, note 2; Duranton, Droit Fr., t. 5, p. 297, No. 303; Toullier, Droit Fr., t. 3, p. 129, No. 186; Sirey, Code Civil, Ed. 1886, t. 1, p. 359, note 3 to Art. 653; Marcade, t. 2, p. 592; Pardessus, Servitudes, p. 237, Part. II, Chap. II, Sec II, S. I, Distinction, 3; Dalloz' Art. 653, numbers 6, 7, 9 and 11. 3, citing Rennes, 9 Juill. 1821; J. G. Servit, 413, 1 et 436; Pau, 18 Aout, 1836, Ibid, 413, 2; Reg, 4 Juin, 1845; D. P. 45, I, 358; Aubry et Rau, v. 2, p. 419, citing Duvergier sur Toullier, III, 187, note a; Caurroy, Bonnier et Ronstain, II, 286; Caron " Des Actions Possessoires, No. 95; Toullier II, p. 379; Demante Cours 11, 507, bis II; Coll. nouv, VI 2, 446; Sir, 35, 2, 298, Reg. rej. 4 Juin, 1845; Pau, 18 Aout, 1834; Sir, 45, 1, 824; Pau 7 Fevrier 1862; Sir, 62, 2, 499; Demante, t. 1, Sec. 1, 1, No. 670, p. 317; Laurent Dr. Civ., t. 7 | n. 526, p. 609, citing Arret de Rejet du 4 Juin, 1845 (Dalloz, 1845, 1, 358).

*Moise & Titche* and *W. B. Lancaster* for Defendant and Appellant:

6. A "servitude of light" can not be acquired by prescription through a window in a wall the exclusive ownership of which is vested in the person claiming the servitude. See reasons for the suppression of Arts. 43 and 44 of the Code of 1808, given by compilers of the Code of 1825 in their Projet, Ed. Ben. Levy & Co , 1823, p. 73; Lavergne, Tut.,vs. Lacoste, 26 An. 507; Jeannin vs. DeBlanc, 11 An. 465; Lau-

Oldstein vs. Building Association et al.

rent, Vol. 7, No. 518, p. 600, Nos. 517 and 518, pp 599, 600, Vol. 7, ar. 150, par. 162, p. 190, par. 142, p. 166, Vol. 8 No. 40, pp. 61 and 62; Domat 1069, 1047, 1019; L. 10, D. *cum proed.* 1, 26 *de servit. proed. urban.*, R. C. C. 658.

7. Every proprietor has a right to build within his own boundary lines above or below the soil in a perpendicular line. R. C. C. 673.

8. A prohibition against building is a non-apparent servitude and can be only established by title. R. C. C. 765, 766, 728.

9. Continuous apparent servitudes *only* can be acquired by prescription. R. C. C: 765.

10. Differently with servitudes established by *destination du père de famille.* They are not confined exclusively to continuous apparent servitudes as provided for in the first paragraph of Art. 767, but include all of their necessary adjuncts and connected arrangements, such as the situation and position of things, indicating the destination intended by the former owner, and involving that relationship between the two immovables referred to in the second paragraph of the article. They also include all those servitudes of which the *signs* are *apparent* according to Art. R. C. C. 769. These may be *discontinuous.* R. C. C. 769, 767. Sirey, notes 19, 21 and 23 to Art. C. N. 694, which is an exact reproduction of our Art. 769. He says, note 19, "L'art. 694 est applicable au cas de servitude discontinue," citing "Toulouse 21 Juill. 1836; S. 37. 2. 155—p 37. 1. 92—Caen 15 Nov. 1836, S. 37 2. 187—p. 37. 1. 583.—Cass. 26 Avril 1837. S. 37. 1. 916—p. 37. 1. 304 —Douai, 1er Juill. 1837. S. 38. 2. 22—p. 38, 1. 185.—Limoges, 4 Aout 1840, S. 41. 2. 99 —Cass 8 Juin 1842, S 42. 1. 609—p. 42. 1. 766; 17 Nov. 1847, S. 47. 1. 30—p. 47. 2. 664.—D. 47. 2. 377—30 Nov. 1853, S. 54. 1. 679—p. 55. 2 576.—D. 54 1. 17; 7 Avril 1863, S. 63. 1. 369—p. 64. 647—D. 63. 1. 413; 27 Mars 1866, S. 66. 1. 215—pp. 66. 548.—D. 66. 1. 339; 5 Juin 1872, S 72. 1. 371—p. 72. 991.—D. 72. 1. 231; 22 Avril 1873, S. 73 1. 276—p. 73 668.—D. 73. 1. 428 —En ce sens Merlin Rep., Vo. Servit., Sec. 19, n. 2; Pardessus, n. 289 et 300; Solon, n. 389; Caron Act. Poss., n. 270; Demolombe, t. 2, n. 821; Aubry et Rau, t. 3, Sec. 252, note 9: Du-Caurroy, Bonnier et Roustain, t. 2, n. 354; Demante, t. 2, n. 549 bis; Dupuich, Rev. prat., 1862, p. 209.—V. encore Toullier, t. 2. p. 450 et S."

11. The attachments to an opening in a wall, such as window blinds or doors opening and closing, are apparent discontinuous servitudes. The hand of man is required in their use. R. C. C. 727, Sirey, Note 14, Art C. N. 688, Ed. 1886,

12. The servitude of light defined by Art. R. C. C. 717 is of two kinds, the apparent and positive, and the non-apparent and negative. R. C. C. 717, 728; Cooper's Justinian, p. 470; Laurent, t 8, Sec. IV, 143, p 172.

13. If one of adjacent proprietors should violate the prohibition contained in Art. 696, R C.C , by making openings in the common wall he can only acquire by prescription the right to have the openings there—which would be a servitude in its continuous apparent aspect. He could not acquire the non-apparent, indefinite right to prevent his neighbor from building on his own property opposite said openings. Projet of the compilers of the Code of 1825, Ed. Ben. Levy & Co., p. 73, reasons for suppression of Articles 43 and 44, Code of 1808; R C C. 696, 765, 76ᶜ, 728; C N. 677, 678; Laurent, Vol. 8, p. 54; Taylor vs. Boulware, 35 An. 471.

14. The right in an adjacent proprietor to make a wall common under Arts. R. C. C. 676 or 684. is indefeasible and imprescriptible. Jeannin vs. DeBlanc, 11 An. 465: Lavergne, Tutrix, vs. Lacoste, 26 An. 507.

15. Trivial attachments made to a wall on the boundary line between two lots, the exclusive property of which is vested in one of the proprietors, can not have the effect of forfeiting the right of the other proprietor to make the wall com-

mon or to withdraw the attachments, and pay such damages as he may have caused. R. C. C. 676, 684.

16. Nor can such acts be urged as an estoppel (pleaded after trial), against the consideration of positive uncontradicted proof of non-commonalty of the wall shown during the trial, and no objection made to the introduction of the evidence.

17. Nor can a servitude of light based upon the prescriptions of ten, twenty and thirty years as to openings in said wall because of its continuous existence of commonalty for that period of time, be acquired through the agency of such a plea, based upon the trivial acts referred to.

18. Plaintiff's remedy in such a case is to enforce the conditions precedent upon which the right to such use is based. Florance vs. Maillot, 22 An. 114; Lavergne vs. Lacoste, 26 An. 507; Chism & Boyd vs. Lefebre, 27 An. 199; Costa vs. Whitehead & Carroll, 20 An. 341; Auch vs. Labouisse, 20 An. 554; Davis vs. Grailhe, 14 An. 338; Grailhe vs. Hown, 1 An. 140; Murrell vs. Fowley et al., 3. An. 165.

19. Private individuals can not secure the abatement of a nuisance arising from the erection of a building in violation of city ordinances unless special, particular damages are alleged and proved. Blanc vs. Murray, 36 An. 162; Werges vs. R. R. Co., 35 An. 641; Cooley on Torts, 2d ed., pp 732, 7; Wood on Nuisances, 2d ed., Secs. 645, 646, 668; Wait's Actions and Def., Ed. 1885, p. 107, Sec. 8, Vol. 2, p. 108; Soltau vs. Deheld, 9 Eng. Law and Eq. 104; Milhau vs. Sharp, 27 N. Y (13 Smith) 611; Pierce vs. Dart, 7 Cow. 609; Francis vs. Schoelkoff, 53 N. Y (8 Sick) 152: Ford and Wife et al. vs. Groves, 29 Md. 188, 194; Clark vs. Ice Co., 29 Mich. 508; Brown vs. Perkins and Wife, 12 Gray, Mass. 100; Houck vs. Wachter, 34 Md. 265; Lawson's Rights, Rem. and Act., Vol. 6, Par. 2961, 2970.

20. To recover judgment for damages the amount must be fixed with clearness and certainty. Lallande vs. Bull, 21 An. 185; Gebelin vs. Hamilton & Scott, 18 An. 646; Dangerfield vs. Fauver, 19 An. 172; Sutton vs. Mock, 18 An 597; Kearney, Blois & Co. vs. Hauche, 18 An. 116; 15 An. 268, 457; 22 An 378; 19 An. 121.

21. Where a judgment recognizes plaintiff's demand for a servitude of light and orders defendant to remove his obstruction to said light (such obstruction being a building opposite plaintiff's window), and where it is further ordered that in default of his compliance within thirty days the sheriff shall remove said obstruction, so as to allow plaintiff the exercise of his servitude of light, and said judgment does not state specifically the distance the building is to be removed, it is void for want of certainty. A judgment should not depend for its execution upon the discretion of the sheriff. Black on Judgments, Secs. 116, 117, 118; Copley vs. Bonnes et al , 7 An. 578; Williams vs. Kelso, 7 La. 406.

---

The opinion of the court was delivered by

BREAUX, J.    Plaintiff is the owner of an improved lot in this city which he purchased from Mrs. Emma Reese.

The building improvement is a two-story dwelling house constructed years ago.

Witnesses residing in the neighborhood, advanced in years, did not know when it was built. They saw it in their youth where it now is.

One-half of one of the walls was constructed on the lot which now belongs to the defendant.

It is not proven that any of defendant's authors contributed in any manner to the building of this wall.

There are eight windows in this wall—four in the first story and the others in the second.

Four of these windows have blinds, opening and closing on their hinges.

The defendant bought the adjacent lot, on which the said wall partly rests, from the Firemen's Building Association.

The structures on defendant's property were, at the time of his purchase, two small houses; one an old frame cottage fronting on the street with one of its side walls extending from the banquette to the front corner of plaintiff's house, on or near the boundary line of the two premises. The other was in the rear of this lot.

The shutters of defendant's cottage opened on plaintiff's flower garden in front of his house.

The defendant had eighteen inches cut off the western side of the building (the side adjacent to plaintiff's lot), and reduced its width by that number of inches. His shutters no longer open on plaintiff's lot.

The space between the two corners of plaintiff's building and defendant's cottages, separated by eighteen inches cut off, as just mentioned, was closed by a wall about seven feet high.

Another building, the one in the rear of the lot, was moved by defendant against the wall of plaintiff, leaving a space along the wall between this moved building and defendant's cottage in front.

This space was afterward taken up with a new structure against plaintiff's wall and connecting defendant's cottage with the said moved building.

There is no window in that wall opposite this part of the building.

The uprights of the building touch the wall of the plaintiff. These uprights average three by four inches in thickness.

Laths were nailed thereon and afterward the inside wall was plastered.

This part of the building has no wall on the outside other than plaintiff's.

The frame of each of the defendant's buildings is self-supporting.

Four of the windows are almost entirely closed by the wall of de-

fendant's building.    That part not closed by the wall was closed by the defendant with boards.

Defendant's buildings are covered with slates.

Where the roof touches the wall there is a coat of plaster, serving as a valley or conduit to the rain falling on the roof.

A shed was constructed in the rear of the last building, one of the walls of which completely obstructed two windows.

The two remaining windows were closed at first with boards, afterward screens were erected.

Plaintiff's vendor states, as a witness, that the closing of the windows darkened the apartments of the house and caused dampness.

It was her reason for selling, she says.

A skylight was opened; it did not give sufficient light, another witness testifies, and it is necessary, at times, to light the gas in the kitchen.

They also testify that the value of the property was depreciated; the danger from fire was increased.

### PLEADINGS.

Plaintiff alleges that the wall is a party wall, and that the defendant had no right to close his windows, which during more than thirty years had given access to light and air.

That his possession and that of his antecedent owners entitles him to these windows.

That the defendant has annoyed and harassed him by depriving him of light and air.

For damage to his property, deprivation of light and air, and the value of half of the wall he claims $4500.

The defendant excepted to plaintiff's petition on the ground that his allegations were contradictory, and his demands inconsistent, and that he should be made to elect one or the other.

In compliance with the court's ruling, plaintiff, after having reserved a bill of exception to the ruling, elected to abandon the demand for the value of the wall and rested his case on its being a wall in common.

The defendant filed a general denial, and in addition alleged that his acts, on his premises, were in pursuance of his legal rights as owner.

The plaintiff also filed a special plea of immemorial possession and pleaded the prescription of ten, twenty and thirty years.

He also filed a plea in estoppel, based on defendant's allegation in his answer, that in acting as he had, he pursued his legal rights as owner.

The judge of the District Court maintained the pleas of prescription and estoppel and ordered that the hindrances be removed, and recognized a servitude of light and air as described in the petition.

---

The owner of a lot in a city who first builds in a place not surrounded by walls may rest one-half of his wall on the land of his neighbor. C. C. 675.

There is conflict between the article just referred to and Art. 505, C. C.

Under the latter the ownership of the soil carries with it the improvements.

Under the former he has the right to erect a construction on the owner's property and to remain the owner until his neighbor may choose to make it a wall in common.

Built at his expense, he is the owner. Jeannin vs. DeBlanc, 11 An. 465; Lavergne vs. Lacoste, 26 An. 507.

In each of the cases just referred to, the wall which was the subject of litigation was built at the individual expense of one of the neighbors and rested upon the line of division of the properties adjacent one to the other. In each it was held that the wall was owned by the proprietor at whose expense it was built.

The case principally relied upon by the plaintiff is not similar.

The two buildings were separated by a wall in common; it was presumed common, for the reason that each building on the respective lots rested on the whole wall. It was decided that the flues in this wall also were in common as well as the wall used by both proprietors. Weill vs. Baker, 39 An. 1102.

In the pending case, prior to moving the buildings as before stated, there was no structure against or near the wall.

The fact that this wall separated defendant's lot from plaintiff's houses does not make it a wall in common.

Every wall which separates a yard and garden in a city shall be presumed to be common. C. C. 677.

This article corresponds to Art. 656 of the C. N.

Baudry Lacantinerie commenting upon the latter says:

" The wall which separates a house from a garden or lot is not pre-sumed a wall in common (mitoyen).

" The law reads between buildings; and between enclosure and gar-den, and not between a building and an enclosure and garden." Vol. 1, p. 884.

" The owner of the enclosure or of the garden has not the same interest in constructing the wall as the proprietor of the house." Ib.

He can not be forced to surrender part of his land and made to pay the cost and value of the wall, although of no service to him in building.

The ownership remains in the one who has had it constructed until the owner of the adjacent lot makes it a wall in common.

" The defendant contends that until the wall is made common it is her exclusive property * * * it appears to me that view of the case is correct." 11 An. 465.

It was decided in said case that plaintiff did not have a right of action to have the window closed in a wall which he did not choose to make a party wall.

It is obvious that in order that prescription may be acquired the owner must be able to assert his right.

" The wall belonged to plaintiff in full ownership until the owner of the contiguous lots should pay for half of it, and this right would exist so long as that wall stood." 26 An. 507.

It is in some respects different under the French Code. In a case in which the facts were somewhat similar to those of the case at bar the plea of immemorial possession was maintained.

The grounds were that the owners of the adjacent estate before the wall had been made one, in common, had the right to have the win-dows closed before making it a party wall.

" They, the said parties, permitted a servitude to be established which they might have prevented."

" Legislation and jurisprudence have established that servitude of light can be acquired by prescription." Montagnac vs. Montégu, Cassation, 1869, p. 387.

In Jeannin vs. DeBlanc, the reverse is decided, " the wall belongs exclusively to the party who built the wall." The right of action " remains in suspense until it is made a wall in common."

This decision is not the only authority.

Under the Code of 1808 the proprietor of a wall not in common adjoining the estate of another had the right to make windows under certain restrictions.

The articles conferring the right were not included in the Code of 1825. The reasons given for the suppression of those articles show that it was not the intention to prohibit the openings in walls thus situated.

"*Nous avons cru devoir supprimer ces deux articles qui prescinent au propriétaire d'un mur non mitoyen joignant immediatement l'heritage d'autrui de n'y faire des ouvertures ou fenêtres qu'a une cer taine hauteur, et avec des burreaus ou a verre dormant. Nous avons pensé que chacun doitêtre le maitre defaire dans sonbien ce qui lui plait et par consequent, d'ouvrir dans son mur telles fenêtres que bon lui semble.*" Travaux Préparatoires, page 73. (La. C. C. of 1825.)

The question had been previously considered in this and other States and the doctrine has since been followed in numerous well considered cases.

" The simplest rule, and that best suited to a country like ours, in which changes are continually taking place in the ownership and use of lands, is, that no right of the said character can be acquired, that is, the prescriptive right to light and air, without express grant of an interest in or covenant relating to the lands over which the right is claimed." Wait's Actions and Defences, Vol. I, p. 297, p. 295 *et alia*.

The French text writers are equally as clear as to the right of the owner of lot adjacent to build on his property. The owner who has possessed during thirty years windows at a prohibited distance, has acquired the right to conserve them. But has he, in addition, ac-quired the right to prevent the neighbor from constructing on his land buildings near enough to render the lights useless? The an-swer of the commentator is in the negative. Mourlon, Vol. I, p. 861.

Equally as clear is Laurent, Vol. 8, p. 54:

*Si, dans un mur joignant immédiatement l'héritage d'autrui, il pra-tique des vues au lieu de jours, s'il les possede pendant trente ans, il aura recouvré la liberté de son héritage, la servitude légale de l'article 676 sera éteinte. Mais il n'aura acquis aucun droit sur l'héritage du voisin, celui-ci conserve, de son côté, la liberté de son héritage, il peut con-*

*struire même contre les fenêtres de son voisin, sans être tenu de respecter un prêteddu droit de vue qui n'existe pas.*

The wall is not a party wall.

The owner of the adjacent lot has not paid its cost, nor its value.

His buildings were not erected against the wall to support any weight.

The testimony gives rise to the immediate impression that defendant's buildings were constructed against the wall to close the windows so as to prevent servants and children from prying upon the privacy of his dwelling and premises.

The plaintiff contends that it is a partition wall in order evidently to establish a servitude of light.

If we were to maintain plaintiff's contention that the wall is one in common, prescription would at most commence to run from the time the buildings were moved against the wall. This would not be of any service to his cause. The acquisition of the right would not have a retroactive effect. There was no estoppel on the part of the defendant. The allegation in his answer that he acted in pursuit of his right as owner is not such an admission as makes it conclusive that the wall was in common.

The wall not being a party wall, the neighbor had no right to its use, and was without authority to close the windows as was done.

The plaintiff having alleged a party wall and the defendants having denied, each manifestly against his interest, we treat the question as an original question and base our conclusion on the testimony, which establishes that it was not in common.

" Generally a party is not estopped by assuming a position forced upon him by the opposite party." A. and Eng. E., Vol. 7, p. 20; Greenleaf, Vol. 1, p. 34.

Plaintiff urges that a city ordinance has been violated relating to the moving and remodeling wooden buildings. Private individuals have no right of action unless they have personally suffered damages.

" Ownership gives the right to use, to enjoy one's property in the most unlimited manner not prohibited by law." C. C. 491 and 450.

The allegations with reference to damages were not proven, and plaintiff is therefore left without cause of complaint on account of the said violation.

The additional danger from fire was not shown, or any increase in the rate of insurance.

No depreciation in the value of the property was proven.

The vendor to plaintiff says that after the structures had been moved against her wall she accepted $1000 less than the price at which she had previously offered the property.

This statement uncorroborated by other testimony does not establish the difference in the value of the property, which should be shown by direct r. ference to the value of the house, before the moving and after, and not by what a vendor asked one day and determined to accept the next. The plaintiff lastly urges that the city ordinance was not only violated, but that the defendant in violating it had conceded his breach of the law and fixed matters so as to prevent an injunction.

Our conclusion makes it unnecessary to consider this proposition at length.

The defendant had no right to close windows as he did and to build against and use his neighbor's wall as he did.

Plaintiff had no right under said city ordinance (actual damages not having been proven) to prevent him from moving his buildings.

The defendant has the right to make the wall one in common by paying half its value, or he can build as near to plaintiff's wall as he chooses, provided his structures do not touch his wall.

The judgment appealed from is affirmed in so far as it orders that the boards nailed on the windows and any of defendant's structures touching plaintiff's wall be moved and made not to touch it; also in so far as it orders the plaster serving as a valley or conduit for water to be taken off plaintiff's wall.

It is amended by rejecting plaintiff's demand to have them moved any further than to prevent their touching plaintiff's wall.